704 May 29, 2025 No. 457

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE ANTONIO HERNANDEZ,
*Defendant-Appellant.*

Marion County Circuit Court
16CR65578; A179065

James C. Edmonds, Judge.

Submitted March 8, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and O'Connor, Judge.*

SHORR, P. J.

Affirmed.

_____
\* O'Connor, Judge *vice* Mooney, Senior Judge.

**SHORR, P. J.**

This case is before us for the second time following our decision in *State v. Hernandez*, 308 Or App 783, 481 P3d 959, *adh'd to on recons*, 309 Or App 784, 483 P3d 59 (2021). After a retrial, defendant now appeals from a judgment of conviction for felony fleeing or attempting to elude a police officer, ORS 811.540 (Count 1); unlawful use of a weapon with a firearm (UUW-F), ORS 166.220 and ORS 161.610 (Count 3); felon in possession of a firearm, ORS 166.270 (Count 4); and misdemeanor fleeing or attempting to elude a police officer, ORS 811.540 (Count 6).[1] He raises two assignments of error, both relating to his UUW-F conviction. He argues that the trial court erred in denying his request for a lesser-included offense instruction and in denying his request for a jury concurrence instruction. For the reasons that follow, we affirm.

In defendant's first assignment of error, he challenges the trial court's refusal to instruct the jury on the offense of reckless endangerment, ORS 163.195, as a lesser-included offense to UUW-F. "We review the trial court's refusal to instruct the jury on a lesser-included offense for errors of law." *State v. Lee*, 174 Or App 119, 125, 23 P3d 999, *rev den*, 332 Or 559 (2001).

"[A] court may not instruct the jury on any offense that is not either the offense charged in the indictment or a lesser-included offense of that crime." *State v. Sparks*, 228 Or App 163, 169, 206 P3d 1197 (2009).[2] As noted, the issue presented here is whether reckless endangerment was a lesser-included offense of UUW-F. A lesser-included offense is one that meets either of two tests: (1) that one offense "is 'necessarily included' in the other, by virtue of the elements of the former being subsumed in the latter;" or (2) "that the facts alleged in the indictment expressly include conduct

---

[1] In defendant's first trial, he was acquitted on Count 5, felon in possession of a restricted weapon, ORS 166.270, and therefore that count did not go before the jury on retrial. In his second trial, he was acquitted on Count 2, attempted murder in the first degree, ORS 163.107.

[2] In addition, a "defendant is entitled to a jury instruction on a lesser-included offense if the evidence and all reasonable inferences support submission of the lesser charge." *State v. Chapman*, 209 Or App 771, 777, 149 P3d 284 (2006), *rev den*, 342 Or 473 (2007). However, we first determine here whether the indictment itself alleged the lesser-included charge.

that describes the elements of the lesser included offense."
*State v. Chapman*, 209 Or App 771, 777, 149 P3d 284 (2006),
*rev den*, 342 Or 473 (2007). Defendant's argument relies
solely on the second test. Whether the second test is satis-
fied is determined "on a case-by-case, as pleaded, basis." *Id*.
Therefore, we must decide whether the conduct alleged in
the indictment described the elements of reckless endanger-
ment, the requested lesser-included offense in this case.

On the UUW-F charge, the indictment alleged that
defendant "did unlawfully carry or possess with intent to
use unlawfully against [a police officer], a firearm, a deadly
weapon. The state further alleges that the defendant per-
sonally used or threatened to use a firearm during the com-
mission of this felony."

ORS 163.195(1) defines the offense of recklessly
endangering another person as "recklessly engag[ing] in
conduct which creates a substantial risk of serious physi-
cal injury to another person." The first element required by
the statute is a mental state of recklessness when defendant
engages in the conduct at issue. Second, defendant's conduct
must create a substantial risk of serious physical injury to
another person.

The parties do not appear to contest the mental
state element but rather focus on whether the allegations
establish the conduct element of reckless endangerment.
Defendant asserts that the allegation that he "used or
threatened to use a firearm during the commission of this
felony" satisfies the element of creating a substantial risk of
serious physical injury to another person. In response, the
state counters that using or threatening to use a firearm
does not necessarily establish a substantial risk of serious
physical injury *to another person*. We agree that the conduct
alleged in the indictment does not necessarily establish a
risk to another person. *See State v. Johnson*, 340 Or App
494, 499, ___ P3d ___ (2025) (distinguishing UUW-F from
another offense that did not require that the defendant use
or threaten to use a firearm against another person).

The reckless endangerment statute refers to endan-
gering "another person," and we have previously addressed

the issue of whether that statute requires that "any person actually be present and in a 'zone of danger' at the time of the defendant's conduct." *State v. Harbert*, 155 Or App 137, 140, 963 P2d 710, *rev den*, 327 Or 554 (1998). We concluded that the statute does not "require explicitly" the actual presence of another person, but it "prohibits conduct that is *likely* to expose another person to harm." *Id.* at 140-41 (emphasis added). For instance, holding a loaded handgun unsafely in a crowded place would constitute reckless endangerment. *State v. Giron-Cortez*, 372 Or 729, 751, 557 P3d 505 (2024). We have also concluded that a defendant's conduct was likely to expose another person to serious physical injury where the defendant fired shots into a van occupied by several people, *State v. Moses*, 165 Or App 317, 323, 997 P2d 251, *rev den*, 331 Or 334 (2000), and where the defendant fired shots into the ceiling and front door of his duplex in a residential area, even though there was no evidence anyone was actually in range of the shots, *Harbert*, 155 Or App at 141.

In this case, although the indictment alleged in Count 3 (UUW-F) that defendant carried or possessed a firearm and intended to use the firearm against an officer, it is unclear, from those allegations at least, if the officer was even present when defendant used the firearm. Count 3 alleges that defendant "personally used or threatened to use a firearm during the commission of this felony." That language does not necessarily imply that defendant's conduct was likely to expose another person to harm. Count 3 does not allege that defendant held or discharged the firearm in the direction of another person or at a place where other people were likely to be. It is at least possible, based on the facts alleged, that defendant used or threatened the use of a firearm without creating a substantial risk of serious physical injury to another person. *See State v. Cook*, 163 Or App 578, 585-86, 989 P2d 474 (1999) (indictment charging the defendant with causing serious physical injury did not allege the element of extreme indifference to the value of human life, because an actor could cause serious injury without acting with extreme indifference to the value of human life). Therefore, the conduct alleged does not establish every element of reckless endangerment. We conclude

that reckless endangerment was not a lesser-included offense of the UUW-F charge as alleged. The trial court did not err in declining to give the requested instruction.

We turn now to defendant's second assignment of error, in which he challenges the trial court's failure to give a jury concurrence instruction on the UUW-F charge. We begin with the parties' disagreement over whether defendant preserved his claim of error.

At the close of the state's evidence, defendant argued, among other things, that for Count 3, UUW-F, the state should have to elect which of "two separate acts" it was relying on. The two acts in question followed an attempted traffic stop. The first act was when defendant got out of his car in a shooting stance towards the officer, and the second was when defendant appeared to raise a gun at the officer while running away. He argued that because the indictment charged a single crime, but the evidence would permit a jury to find two separate occurrences of that crime, he was entitled to election or a concurrence instruction. The state countered that "it [was] a singular incident" that "just happen[ed] to go over several seconds," which did not require election or a concurrence instruction. The court denied the motion. After the close of all evidence, defendant renewed his motion to elect and request for a concurrence instruction "for preservation purposes." The court did not require an election or give a concurrence instruction. Defendant assigns error to the denial of the concurrence instruction with respect to Count 3.

On appeal, the parties contest preservation. Defendant reprises his argument that the state presented two factual occurrences of Count 3 so the court should have instructed the jury to concur on one of the two occurrences. He more specifically explains that UUW-F includes the element that "defendant personally used or threatened to use a firearm during the commission of this crime"—and that the state presented two instances when that could have occurred. In response, the state points out that defendant acknowledges on appeal that concurrence may not be required for the possession and intent elements of UUW-F. The state further contends that defendant never argued in

the trial court that the "with a firearm" element of UUW-F required concurrence on the specific act that constituted use or threatened use of the firearm.

To preserve an argument, a party "must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Preservation rules are meant to ensure that the trial court and the parties "are not taken by surprise, misled, or denied opportunities to meet an argument." *State v. Wideman*, 203 Or App 359, 364, 124 P3d 1271 (2005). "[T]he preservation rule is a practical one, and close calls \*\*\* will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009).

Here, we conclude that the policies of preservation have been served. Defendant's argument before the trial court was that the charge of UUW-F required a concurrence instruction because the evidence presented two separate instances of that crime. His argument on appeal is largely the same, although he clarifies that the state presented two separate instances of when he used or threatened to use a firearm. We are unpersuaded that defendant failed to preserve his argument below because he focuses on one element of the crime on appeal. When the state alleges that a defendant used or threatened to use a firearm during the commission of a felony under ORS 161.610, "it creates a new, aggravated form of the underlying felony, one element of which is the use or threatened use of a firearm." *State v. Dentel*, 272 Or App 130, 133, 354 P3d 753 (2015). Defendant's argument in the trial court alerted the state of his position that "a jury must be instructed concerning the necessity of agreement on all material elements of a charge in order to convict." *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000). The firearm element is a material element of the offense of UUW-F. On appeal, defendant maintains his argument that the jury had to agree on all essential

elements of UUW-F because the state presented two separate occurrences of the crime. The state had the opportunity to respond, and the trial court had the opportunity to rule on that question. Defendant adequately preserved his claim of error.

Turning to the merits, we consider whether the trial court erred in denying defendant's requested jury concurrence instruction on the UUW-F count. We review a trial court's failure to give a requested instruction for legal error. *State v. Arellano-Sanchez*, 309 Or App 72, 79, 481 P3d 349, *rev den*, 368 Or 511 (2021). Under Article I, section 11, of the Oregon Constitution, a jury can return a guilty verdict "only if they agree on the facts that the law (or the indictment) has made essential to [the] crime." *State v. Trenary-Brown*, 311 Or App 579, 583, 489 P3d 1114 (2021) (internal quotation marks omitted). When the indictment charges a single violation, but the evidence permits the jury to find "multiple, separate occurrences of that offense" and the state does not elect a particular occurrence, the jury must concur as to which occurrence constitutes that offense. *State v. Ashkins*, 357 Or 642, 659, 357 P3d 490 (2015). However, when the state relies on a single course of conduct to prove the elements of the offense, jury concurrence is not required. *Arellano-Sanchez*, 309 Or App at 85. Therefore, the issue before us is whether the two occurrences identified by defendant were separate, distinct instances or a single continuous course of conduct.

We have held that a series of acts constitutes multiple, separate occurrences of a crime when the acts were "temporally, spatially, and substantively distinct"—that is, they "occurred at different times, in different spaces, and were the cause of different injuries." *State v. Theriault*, 300 Or App 243, 252, 452 P3d 1051 (2019). In *Theriault*, all those factors were met. There were "several stretches of time, over one to two hours," between the physical encounters, the injuries occurred both inside and outside an apartment, and the injuries were "distinct with respect to form and causation." *Id.* at 252-53. Therefore, we concluded that the occurrences were sufficiently distinct such that a jury concurrence instruction was required. *Id.* at 253. In contrast,

in *Arellano-Sanchez*, we concluded that no concurrence instruction was required for second-degree assault where the defendant and victim engaged in "a continuous, unbroken, and brief combat" resulting in several different injuries. 309 Or App at 86. We explained that a jury is not required to concur "on which exact shove in [a] single encounter constituted the assaultive conduct." *Id.* at 85.

Here, as noted, defendant points to two acts which he contends could satisfy the elements of UUW-F: (1) when he got out of his car in a shooting stance, and (2) when he appeared to raise a gun while running away. The parties do not contest that those acts happened within seconds, occurred in the same general area, and were directed at the same officer. Although no lengthy period of time nor significant spatial difference is required for occurrences to be temporally and spatially distinct, *Theriault*, 300 Or App at 252-53, we conclude that there was no meaningful temporal or spatial difference between the two acts in this case. Nor does defendant argue that the acts were substantively distinct. In this case, the acts were part of a single brief, unbroken confrontation between defendant and the police officer. Here, where the acts were not temporally, spatially, nor substantively distinct, we cannot conclude that the two acts constituted separate occurrences. The trial court did not err in declining to give the jury concurrence instruction on Count 3, UUW-F.

Affirmed.